# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN C. RAYNOR, JR., ) | 1:06cv1059 DLB |
| ) | |
| Plaintiff, ) | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, ) ) | |
| Defendant. ) | |

## **BACKGROUND**

Plaintiff Melvin C. Raynor, Jr., ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for child's disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On February 1, 2007, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

1

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his applications on September 30, 2003, alleging disability since August 1, 1991, due to attention deficit disorder ("ADD") and a learning disability. AR 78-80, 95-99, 2540256. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 48-51, 55-60, 61, 257-261, 262-266. On October 24, 2005, ALJ James Berry held a hearing. AR 271-300. ALJ Berry denied benefits on November 20, 2005. AR 11-21. The Appeals Council denied review on June 7, 2006. AR 5-7.

Hearing Testimony

ALJ Berry held a hearing on October 24, 2005, in Fresno, California. Plaintiff appeared with his attorney, Geoffrey Hayden. Vocational expert ("VE") Cheryl Chandler also appeared and testified, as did Plaintiff's mother, Nyona Graves. AR 271.

Plaintiff testified that he completed the twelfth grade in special education but could not read and write. When asked again, he indicated that he could read "just a little bit." AR 276. He also indicated that he could add and subtract, although he answered a simple math question incorrectly. AR 277. He does not have a driver's license and lives with his mother. He testified that he could not remember if he ever had a job, but then remembered that he worked as a janitor at a school for about a month. He was fired because he missed work. AR 277. He testified that he had trouble following instructions but was able to concentrate. He made mistakes and did not get along with the people he worked with. AR 278. Plaintiff further testified that he gets mad easily and has been in a lot of fights. He has served time in jail for petty theft. AR 278.

Plaintiff takes his medications as directed but they make him tired. AR 279. He hears a man's voice in his head who tells him not to listen to anyone and to hurt people. He could not remember if he ever hurt anyone because of the voice. AR 279-280.

Plaintiff is seeing a psychiatrist but could not remember for how long. AR 280. Plaintiff indicated that he had physical problems and stated that he could not stand still. He also testified

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1   that he goes to the bathroom a lot and gets headaches three times a day.  These headaches last all
2   day.  He lays down during the day.  On a normal day, he mostly sleeps and tries to do housework.
3   He watches television but does not play video games.  He does not have a girlfriend and has no
4   social life.  AR 280-282.  He does not cook, grocery shop, go to church or the movies, or visit
5   friends.  He has no hobbies and does nothing for exercise.  AR 282.

6        Plaintiff did not feel that he could keep his mind on a job for eight hours a day because he
7   can't stay focused.  Plaintiff felt that he was getting a little better.  AR 283.

8        When questioned by the ALJ, Plaintiff testified that he thought the medications were
9   helping.  When he's not sleeping, he walks around the apartment complex and stares at trees.
10  His mother drives him to his appointments.  AR 284.  Plaintiff believed that he had problems
11  with standing, walking, lifting and carrying because he could not focus.  AR 285.  When further
12  questioned, he indicated that he did not have any problems walking but sometimes had problems
13  standing still.  He testified that he could not lift 100 pounds because he was weak, but did not
14  know how much he could lift and could not remember the heaviest thing he lifted in the past
15  month.  He also has problems sitting because he can't stay still.  AR 285-286.

16       Plaintiff's mother, Nyona Graves, testified that Plaintiff began receiving psychological
17  treatment when he was six or seven years old.  AR 288.  He has a lot of problems focusing and
18  she has to tell him things repeatedly, maybe 20 or 30 times.  He is at a very low level in reading
19  and writing and does not finish tasks when he starts them.  AR 288.  Plaintiff stays home with
20  her during the day and just walks up and down the street all day.  AR 289.

21       Ms. Graves testified that she takes him for mental health treatment every two to three
22  months and that he has a therapist and a case worker.  AR 289.  She sits in on all the sessions.
23  He takes Seroquel, a medication for hallucinations, because he talks to himself.  He also has
24  problems controlling his temper and loses control.  He got into an accident about two or three
25  years ago while driving even though he doesn't have a license.  AR 290.  Ms. Graves did not feel
26  Melvin was getting any better and instead believed that he was getting worse.  She does all of the
27  household tasks because Plaintiff doesn't stay on task.  He has trouble concentrating and keeping
28  his mind on things.  AR 291.  Ms. Graves was not aware of any physical problems and she has

1  not seen any improvement since he's been on medications. Some of the medication sedates him
2  and he doesn't do anything at all. AR 291-292. Mr. Hayden noted that Plaintiff appeared tired at
3  the hearing and Ms. Graves indicated that he is like that for most of the day. AR 292.

4  When questioned by the ALJ, Ms. Graves indicated that Plaintiff had some neighborhood
5  friends but that they "don't mean him well." AR 292. Plaintiff is on probation for his last
6  offense. AR 293.

7  For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age
8  (21) and education, with no past work experience. This person could lift and carry 100 pounds
9  occasionally, 50 pounds frequently, and could stand, walk and sit for six hours each. This person
10  could perform simple, repetitive tasks and maintain attention, concentration, persistence and
11  pace. This person can relate to and interact with others, and can adapt to usual changes in a work
12  setting. This person can also adhere to safety rules. The VE testified that this person could
13  perform the positions of custodian, gardening, and dishwasher. AR 295-296.

14  For the second hypothetical, the ALJ asked the VE to assume a person with the same
15  exertional impairments, but who could not maintain attention, concentration, persistence and
16  pace and who would become tired after taking medications. This person could not perform work.
17  AR 296.

18  Mr. Hayden asked the VE to consider limitations set forth in a consultive examination.
19  This person could concentrate for less than two hours at a time and would have extreme
20  difficulty with unfamiliar work situations. The VE testified that this person could not work. AR
21  297.

22  Mr. Hayden also asked whether a person with second grade-level functioning in math and
23  reading could perform simple, repetitive tasks. The VE responded that the jobs she identified are
24  demonstratable jobs and are not based on written instructions. AR 298.

25  Medical Record
26  Plaintiff was diagnosed with ADD prior to first grade and was identified as an individual
27  with exceptional needs while attending kindergarten. AR 139, 146. A psychological evaluation
28  prepared when Plaintiff was 14 years old indicated that "a severe ability-achievement

1  discrepancy continues to be present, as well as a processing deficit or deficits." AR 145-146.
2  His ability to attend and concentrate appeared to be within normal limits, although he possessed
3  skills and knowledge in core subjects far below grade and age expectancy. AR 146.
4  　　　　The medical records indicated that Plaintiff received specialized instruction in high
5  school and that he had been suspended at one time for drug possession. AR 138-144.
6  　　　　Plaintiff was put on Paxil in November 2003 after complaining of increased mood
7  swings, depression, an inability to focus and insomnia. AR 157. At that time, he had been off of
8  Ritalin for two years. AR 157.
9  　　　　On December 23, 2003, Plaintiff was examined by J. Stanley Bunce, Ph.D. Plaintiff
10 began receiving benefits when he was diagnosed with attention deficit hyperactivity disorder
11 ("ADHD") when he was five years old, but the benefits stopped when he was taken off
12 medication. He was put on Paxil when he was nine, after his father died suddenly. Plaintiff was
13 currently on Paxil and recently taken off of Ritalin. Plaintiff denied any suicidal or homicidal
14 ideations and stated that he never had hallucinations or delusions. Plaintiff did indicate that he
15 talked out loud to himself at times. Plaintiff graduated from high school in 2002 and attended
16 two semesters of community college. He found the classes too hard and some seemed
17 unnecessary. Plaintiff reported that he currently abstains from alcohol use and that he attended a
18 three-month outpatient substance abuse program as required by the Juvenile Justice System. He
19 denied drug use. He was arrested many times and became a ward of the State. He lived in a
20 group home for one year. He plays video games for fun and helps around the house by
21 babysitting, washing dishes and helping keep the house clean. AR 150-151.
22 　　　　On mental status examination, Plaintiff's grooming and hygiene were inadequate as he
23 appeared unclean. His speech was even and goal directed for a majority of the session and his
24 affect was generally appropriate. He was oriented to person, place, time, object and situation.
25 He could immediately recall the names of three items and could recall two out of three after a
26 short delay. He could spell "stop" forwards and backwards. He could complete two and three-
27 part series of simple verbal instructions without error and was able to repeat a simple sentence
28 correctly. He could copy a pre-drawn design. AR 151.

According to test results, his overall functioning was in the low average range of intellectual capacity and his scores indicated poor school learning, poor acquired knowledge and poor verbal comprehension skills. He scored at the fourth grade level for reading, the second grade level for spelling and the fifth grade level for math. AR 153.

Dr. Bunce diagnosed Plaintiff with a learning disorder, not otherwise specified. He demonstrated the ability to understand, carry out and remember simple instructions, as well as the ability to satisfactorily deal with co-workers, supervisors and the public in an appropriate manner. He may be unable to cope with unfamiliar work situations or changes in routine setting. Regarding his ADHD, he demonstrated inattention and an inability to concentrate, but not hyperactivity. He could not manage his own funds or household. Dr. Bunce recommended that Plaintiff participate in a program where he would learn a vocation so that he could earn his funds through a job, as his abilities to perform tasks that necessitate visual-motor coordination are his strength. Dr. Bunce also recommended that Plaintiff seek psychotherapy in order to cope with past issues, such as losing his father. AR 153.

On December 30, 2003, Plaintiff reported that he was feeling better and was better able to concentrate and sleep. His Paxil dose was increased. AR 155. He previously reported that the Paxil made him drowsy. AR 156.

On December 31, 2003, a State Agency physician completed a Psychiatric Review Technique form. Plaintiff had a learning disorder that caused mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence and pace. There was insufficient evidence to opine as to the episodes of decompensation. In a Mental Residual Functional Capacity Assessment form, the State Agency physician opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions. However, he retained the ability to perform simple, routine, repetitive tasks. AR 174-190.

Plaintiff resumed treatment with the Merced County Department of Mental Health in January 2004. He indicated that he had an anger problem and his mother stated that he had ADD. Plaintiff reported significant impairments in his overall functioning with regard to completing tasks and various activities. Plaintiff had been without treatment for the prior two

Case 1:06-cv-01059-DLB   Document 20   Filed 10/24/07   Page 7 of 13

years. He was placed in a group home for about one year when he was 16 or 17, and was treated there. He was taken off Ritalin and placed on different medications. His mother did not continue his treatment once he was released. He has been taking Paxil, prescribed by his family doctor, for the past month. On mental status examination, he was appropriately dressed and groomed, but there was evidence of psychomotor retardation. Speech was normal and coherent and his affect was appropriate. His mood was irritable, angry and depressed at times. He was generally cooperative and pleasant, but his reports at times were inconsistent with the information in this chart. Intellectual functioning appeared to be concrete and his insight seemed limited. There was no evidence of delusional content or psychotic features, although there was possibly some mild paranoia. He denied audio or visual hallucinations. AR 237. He was diagnosed with adjustment disorder with mixed disturbance of emotions and conduct, chronic, mood disorder, not otherwise specified, and intermittent explosive disorder. He had borderline intellectual functioning and antisocial traits. AR 231-239.

Mental status examinations performed on March 28 and 23, 2004, were within normal limits. AR 220, 222.

On March 31, 2004, Plaintiff reported a more "mellow mood" with reduced anger outbursts. Plaintiff wanted to "get stabilized so [he] could focus," which he thought would help him get back into college. AR 219. Plaintiff had symptoms indicative of ADD traits, but they appeared to be mild. AR 219.

In April 2004, Plaintiff's therapist described him as pleasant and articulate. AR 217.

On May 10, 2004, Plaintiff's mother reported a reduction in maladaptive behavior but she was concerned that he still did not want to listen to her and acted with frustration at his responsibilities. Plaintiff was recently arrested for petty theft and understood that it would delay his goals of attending automotive vocational classes. Plaintiff appeared to be responding well to medications and stated that he felt more focused than usual with appropriate concentration. AR 215, 218.

7

Treatment notes from May 14, 2004, indicate that Plaintiff felt that his medications were working well for him and he was feeling calm and focused. He had hopes for his future, with the medication. He reported no side effects. AR 214.

State Agency physician Rosemary Tyl, M.D., completed a second Psychiatric Review Technique form in June 2004. Plaintiff had a learning disorder and ADHD that caused mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence and pace. There was insufficient evidence to opine as to the episodes of decompensation. In a Mental Residual Functional Capacity Assessment form, Dr. Tyl opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions. He was also moderately limited in his ability to maintain attention and concentration for extended periods of time and in his ability to work in coordination with or proximity to others without being distracted by them. Plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods. He was moderately limited in his ability to interact appropriately with the general public and in his ability to accept instructions and respond appropriately to criticism from supervisors. He was moderately limited in his ability to get along with coworkers or peers without distracting them or exhibiting behavior extremes. He was moderately limited in his ability to respond appropriately to changes in the work setting. AR 194-211.

ALJ's Findings

The ALJ reviewed the medical evidence and determined that Plaintiff's learning disorder and ADHD were severe impairments. AR 15. The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform heavy work, as he had no exertional limitations. He was limited to simple, repetitive tasks. AR 20. Based on this RFC and the testimony of the VE, the ALJ concluded that Plaintiff could perform significant work in the national economy. In making this decision, he found that Plaintiff's nonexertional limitations did not significantly compromise his ability to work at all exertional levels. AR 19.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW[3]

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

---

[3] To the extent that there are differences in the analysis for Child's Disability Insurance Benefits, those differences are not relevant to the instant case.

1  In an effort to achieve uniformity of decisions, the Commissioner has promulgated
2  regulations which contain, inter alia, a five-step sequential disability evaluation process. 20
3  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ
4  found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of
5  his disability; (2) has an impairment or a combination of impairments that is considered "severe"
6  (a learning disorder and ADHD) based on the requirements in the Regulations (20 CFR §§
7  416.920(b)); (3) does not have an impairment or combination of impairments which meets or
8  equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no
9  past relevant work; and (5) retained the RFC to perform a significant number of jobs in the
10 national economy. AR 20-21.
11    Plaintiff argues that the ALJ erred at step five because he failed to pose a complete
12 hypothetical question to the VE.

### DISCUSSION

14    Plaintiff contends that the ALJ's hypothetical was incomplete because it did not include
15 all nonexertional limitations found by the ALJ. Specifically, Plaintiff believes that the
16 hypothetical failed to include the limitations in social functioning. He also believes that the
17 hypothetical seems to be inconsistent with the ALJ's other findings.
18    RFC is an assessment of an individual's ability to do sustained work-related physical and
19 mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a
20 week, or equivalent work schedule. SSR 96-8p. The RFC assessment must be based on all of
21 the relevant evidence in the record, including the effects of symptoms that are reasonably
22 attributed to a medically determinable impairment. SSR 96-8p. In addition, the adjudicator
23 "must consider limitations and restrictions imposed by all of an individual's impairments, even
24 those that are not 'severe,'" because such limitations may be outcome determinative when
25 considered in conjunction with limitations or restrictions resulting from other impairments. SSR
26 96-8p.
27    The ALJ found that Plaintiff had the RFC to perform all levels of physical exertion, but
28 that he was limited to simple, repetitive tasks. In so finding, the explained that Plaintiff could

maintain attention, concentration, persistence and pace, could relate to and interact with others, could adapt to usual changes in work settings, and could adhere to safety rules. AR 18.

In another portion of his opinion where the ALJ examines the severity of Plaintiff's mental impairment, he states as follows:

> In terms of the mental rating of impairment severity ("B" criteria), I find the claimant has mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation, each of extended duration, has occurred. Overall, however, I do not find the claimant has any significant nonexertional limitations due to his mental impairments.

AR 18.

Based on these findings, Plaintiff contends that the ALJ should have included these limitations in his RFC. He concedes that a limitation to simple, repetitive work addresses the moderate limitation in maintaining concentration, persistence and pace, but believes that the RFC should have included "his additional findings of a moderate social limitation and one or two episodes of decompensation." Opening Brief, at 4. He further states that the "ALJ seems to almost negate his own findings in the hypothetical stating that [Plaintiff] 'can maintain attention, concentration and pace' and 'relate to and interact with others as well as adapt to us[ual] changes in work settings.'" Opening Brief, at 4.

As explained above, the ALJ conducts a five-step sequential inquiry in determining whether a claimant is disabled. *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996). At step two, the ALJ determined that Plaintiff had the severe impairments of a learning disorder and ADHD. At step three, he determined that these impairments were not "severe" enough to meet or medically equal any of the listed impairments. AR 15. In making the step two and three findings, the ALJ followed 20 C.F.R. § 404.1520a(c), which sets forth the method used to rate the degree of functional limitation related to mental impairments:

> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listing of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the

> degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

20 C.F.R. § 404.1520a(c)(3)-(4).

After the ALJ rates the degree of functional limitations resulting from a claimant's impairments, the ALJ determines the severity of those mental impairments. 20 C.F.R. § 404.1520a(d). If a mental impairment is found to be severe, the ALJ will determine whether it meets, or is equivalent in severity to, a listed mental disorder. 20 C.F.R. § 404.1520(d)(2). If the ALJ determines that the claimant has a severe mental impairment that neither meets nor is equivalent in severity to any listing, the ALJ then moves on to determine the claimant's RFC. 20 C.F.R. 404.1520a(d)(3).

Here, the ALJ analyzed the degree of Plaintiff's functional limitations in activities of daily living, maintaining social functioning, maintaining concentration, persistence or pace, and episodes of decompensation as part of his step two and three findings. Having determined that Plaintiff's mental impairments were severe, but that they did not meet or equal a listed impairment so as to be presumptively disabling, the ALJ determined Plaintiff's RFC. Unlike the analysis at steps two and three, where the ALJ examines the degree of limitation, RFC is the most a claimant can do, "*despite* [his] limitations." 20 C.F.R. § 404.1545(a) (emphasis added).

Therefore, although the ALJ found moderate limitations in maintaining social functioning and one to two episodes of decompensation, he found that Plaintiff could relate to and interact with others, adapt to usual changes in work settings and adhere to safety rules sufficiently to allow him to perform a significant number of unskilled positions in the national economy. Contrary to Plaintiff's assumption, a moderate limitation at steps two and three does not necessarily translate into a disabling RFC. The Ninth Circuit recently explained that the "step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five." *Hoopai v. Astrue*, __F.3d __ (2007 WL 2410178) (9th Cir. 2007) (a step-two finding that a non-exertional impairment is severe does not

1 require that the ALJ seek the assistance of a vocational expert at step five).  As the analysis for
2 steps two and three is different than that at five, Plaintiff's claim that the findings are inconsistent
3 is not supportable.  Plaintiff does not dispute the ALJ's analysis of medical evidence or
4 credibility.

5      The ALJ did not err in failing to include the above limitations in the RFC and he was
6 therefore not required to include them in the hypothetical question.  Plaintiff's claim is without
7 merit and must be denied.

## CONCLUSION

9      Based on the foregoing, the Court finds that the ALJ's decision is supported by
10 substantial evidence in the record as a whole and is based on proper legal standards.
11 Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the
12 Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in
13 favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,
14 Melvin C. Raynor, Jr.

16    IT IS SO ORDERED.

17    Dated:   **October 23, 2007**                              **/s/ Dennis L. Beck**
                                                                                          UNITED STATES MAGISTRATE JUDGE